## MILTON JUDD *vs.* MILES D. WELLS & others.

D., who owned a saw mill and clothier's works, and also the land above and below
them, on both sides of the stream on which they stood, and up to the pond from
which the stream flowed, conveyed to S., in 1833, a piece of the land, below the
saw mill and clothier's works, by a deed which contained these clauses: " With
the privilege of flowing back the water, by a dam on said premises, within two
rods of where the water is now taken out of the pond: Also the privilege of
using the water on said premises for all kinds of machine, except for a saw mill
and clothier's works for customers : And also the privilege of drawing water from
the pond, by raising the gate, for the benefit of the machinery that may be erected
on said premises, under the above exception or reserve : And further, I reserve to
myself, my heirs and assigns, the privilege of raising the gate at the pond, at all
times, to draw water for the benefit of my machinery below: " S. erected a factory
on the land thus conveyed to him: In 1839, D. conveyed to W. the land lying
above that which he had conveyed to S., extending to the pond, and also a strip of
land, two rods wide, on the side of the land conveyed to S., and the deed of con-
veyance relinquished to W. the right to flow any other land which D. owned, by a
dam which might be, or could be raised, on the premises thus conveyed : W. dug
a canal through said strip, and conveyed the water, through said canal, into the
stream below the land and factory of S., thereby rendering said factory nearly
useless: S. brought an action against W. for diverting the water, and W. at-
tempted to justify, on the ground that S. had raised the water higher than within
two rods of where it was taken out of the pond, when he received his deed from
D., and had thus exceeded the limit of the right granted to him by that deed ;
and that W. had diverted only so much of the water, as to keep it down to that
limit.

*Held,* that all the reservations in D.'s deed to S. were for the benefit of D.'s saw mill,
&c. and were to him and his assigns, as owners thereof; and that W., not having
purchased the saw mill, &c. could not set up those reservations for any purpose :
that there was not in D.'s deed to S., either by express words or necessary impli-
cation, any restriction, on which D.'s grantors or assigns could insist, to prevent
S. from flowing D.'s land beyond the line mentioned in that deed, subject to pay-
ment of damages under the mill acts, provided such flowing should not interfere
with any mill above ; and that if S. had raised the water, for the use of his factory,
higher than the limit mentioned in his deed from D., W. was liable to an action
for diverting it, and that W.'s remedy against S., if any, was under the mill act.

TRESPASS UPON THE CASE. The plaintiff's declaration
alleged that there was a stream of water, flowing from West
Pond, in Becket, through the defendants' land, and then
through the plaintiff's land, to his factory standing thereon ;
that the defendants made a canal upon their own land, above
the land and factory of the plaintiff, and turned the water of
said stream from its ancient course, and from the plaintiff's
factory, into said canal, and conducted the said water through
said canal, and discharged the same into the ancient bed of
the stream, below the land and factory of the plaintiff ; by

means whereof the plaintiff was deprived of the use of said water for doing the work of his factory.

The trial was before *Dewey*, J. who made the following report thereof : The plaintiff gave evidence tending to prove the averments in his declaration, and that so much water was diverted from his factory, as to render it nearly useless. He also introduced, as evidence of his title to his land and factory, a deed of the equity of redemption, which was sold on an execution against Robert Stedman, dated August 2d 1843, and also a deed of Clark Dorman to Robert Stedman, dated April 30th 1833, (to which the aforesaid deed of Stedman's equity of redemption referred for a description of the premises conveyed,) which contained, besides a description of the land, the following clause : " With the privilege of flowing back the water, by a dam on said premises, within two rods of where the water is now taken out of the abovesaid West Pond. Also the privilege of using the water on said premises for all kinds of machine, except for a saw mill and clothier's works for customers ; and also the privilege of drawing water from said West Pond, by raising the gate for the benefit of the machinery that may be erected on said premises under the above exception or reserve. And further, I reserve to myself, my heirs and assigns, the privilege of raising the gate at said West Pond, at all times, to draw water for the benefit of my machinery below."

The following facts appeared in evidence : At the time of the grant by Dorman to Stedman, there was a dam, called a sheep dam, (which has been taken away, or has decayed,) across the stream, near its outlet at West Pond, in which was a gate used for the purpose of letting off the water for the works of Dorman, and afterwards for the works of both said Dorman and Stedman, below. The stream had a circuitous course from its outlet to the pond formed by the dam of said Stedman. The defendants dug a new ditch from West Pond, through their land above the plaintiff's land, and turned the water into the same, before the time when they diverted it from the plaintiff's mill, so that the water from its outlet does

not pass in the ancient bed of the stream, but runs in a more direct course. There was a dam on the premises conveyed by Dorman to Stedman, at the time of the conveyance, and had been long before.

All the defendants, except Miles D. Wells, justified the acts complained of in the plaintiff's declaration, on the ground that they acted as said Wells's servants, and by his command. As special matter of defence, said Wells offered to prove that he owned a furnace, on the aforesaid stream, about a mile below the works of Stedman; that said Dorman, on the 22d of April 1839, conveyed to said Miles D. Wells and to Moses Wells the land owned by Dorman, lying above Stedman's land, and extending to West Pond, and also a strip of land, two rods wide, east of the plaintiff's land, on which said Miles D. Wells dug the canal through which he diverted the water from the plaintiff's factory, and also relinquished to said Miles D. and Moses the right to flow any other land which said Dorman owned, by a dam which might be, or could be, raised on the land thus conveyed; that the aforesaid Moses Wells conveyed to said Miles D. Wells all the interest of said Moses in said premises, on the 20th of March 1843; that said Stedman, while he owned the premises now belonging to the plaintiff, increased the height of his dam, so as to cause the water to flow back further than the right to flow was granted to him by Dorman's aforesaid deed to him; that he extended the east end of his dam upon said Miles D. Wells's land, and thereby enlarged his pond of water, and thus wrongfully stopped the water that ought to flow to him, and to which he had right, by a just construction of the conveyances to him, and of Dorman's deed to Stedman. And he contended that, although the defendants did divert a part of the water, so that it would not flow to the plaintiff's factory, yet that neither the plaintiff nor Stedman had a right so to extend his dam, or to increase its height, as to cause the water to flow back further than the right to flow it was granted to Dorman, by his deed of April 30th 1833; and that he (said Miles D. Wells) was justified in diverting so

much of the water as would keep it down to the limits of said grant ; that is to say, so much of said water as he alleged was so wrongfully stopped as aforesaid. And he further contended, that he had a right to take the water so stopped, either by abating the plaintiff's dam, (especially that part of it which was on said Wells's land,) or by means of the canal complained of.

The defendants offered to show that the canal, which diverts the water, was dug entirely upon said Wells's land, and that the bottom of its upper end was not lower than the sill of the sheep gate ; and that they had placed a gate, as a substitute for the sheep gate, in the said canal from the pond, and as far up the stream as the sheep gate, and no lower than that gate was, and on said Wells's own land.

The plaintiff contended that if all, which the defendants thus offered to prove, was proved, it would form no defence to this action ; that he (the plaintiff) had a right to have all the water in the stream flow, in its ancient course, through his premises and past his factory, even if his dam was longer than he had a right to make it : That the defendants had no right to make a partition of the water flowing from West Pond ; because the grant of Dorman to Stedman was a grant to flow without the payment of damages, and did not preclude the plaintiff from the right of flowing the lands above the limits of the grant, upon payment of damages, whenever the gate, referred to in the deed to Stedman, should not be used, or should be removed, or whenever Dorman should convey the land above the plaintiff's works, without a reservation : That, as the reservation in Dorman's deed to Stedman was for the benefit of Dorman's saw mill and clothier's works below, and he has since, without any reservation, conveyed the lands above to the defendant Wells, and Moses Wells, on which said gate was, which he had a right to raise for the passage of the water for the benefit of said works, and the gate has been removed and the channel of the stream changed by the defendants, the plaintiff has a right to raise his dam to such height as his works may require, subject to the

payment of damages, under the statute regulating mills : That if Stedman or the plaintiff had extended his dam upon the defendants' land, it formed no justification of a diversion of the water from the land of the plaintiff.

The judge being of opinion that the facts offered to be proved would constitute no defence to the action, the case was taken from the jury, and reserved for the consideration of the whole court.

A new trial to be granted, if the offered proof would constitute a defence ; otherwise, the defendants to be defaulted, and the plaintiff's damages to be ascertained by an assessor.

*Bishop & Sumner*, for the defendants.

*Byington & Branning*, for the plaintiff.

Shaw, C. J. This is an action upon the case for diverting a watercourse. It appears by the report of the judge, before whom the trial was had, that the plaintiff is the owner of land on both sides of a natural stream, upon which he has a dam and mill ; that the defendants had made a canal entirely around the plaintiff's premises, from the natural bed of the stream above to the natural bed of the stream below, and thus wholly diverted a portion of the volume of water from the plaintiff's mill. The defendants proposed to justify, by showing that the plaintiff claimed under a deed, by which he was restricted in the height to which he should raise the water ; that in fact he had raised his dam, and exceeded such restriction ; and that the defendants' side canal was so constructed, that it would not reduce the height of water in the plaintiff's pond below the level to which he was restricted.

It appeared that the plaintiff claimed through Robert Stedman, who held under a deed from Clark Dorman. In Dorman's deed to Stedman, after a description which includes the bed of the stream, and land on both sides of the stream, there is found this clause : " With the privilege of flowing back the water, by a dam, on the premises, within two rods of where the water is now taken out of West Pond ; also the privilege of using the water, on said premises, for all

kinds of machinery, except for a saw mill and clothier's works for customers; and also the privilege of drawing water from said West Pond, by raising the gate, for the benefit of the machinery that may be erected on said premises, under the above exception or reserve. And further I " (Dorman, the grantor) "reserve to myself, my heirs and assigns, the privilege of raising the gate at said West Pond, at all times, to draw water for the benefit of my machinery below."

At the time when this deed was executed, Dorman, the grantor, owned a mill pond and mill below the granted premises, on the same stream, with a saw mill and clothier's works, and also the land above the premises, to West Pond, and the land next adjoining the premises, on the east. Dorman afterwards sold and conveyed to the defendant Wells the land above and on the east side of the plaintiff's premises, but not the pond, nor the mills and works, below the plaintiff's.

It is very questionable whether, if the plaintiff has exceeded his right, and if the defendants are thereby injured, they can seek a remedy by making an artificial cut on their own land, and thus diverting the water from its natural course. Generally, a party, through whose land a natural watercourse passes, has a right to the use of it in its passage, subject to a reasonable use by coterminous proprietors, but without being wholly diverted. But without placing the decision on this ground, we have thought it expedient, in the first instance, to inquire what are the rights of these parties, in this state of their respective titles.

It seems to us very clear, that as Dorman, the grantor, was owner of mills and clothier's works below the granted premises, on the same stream, all the recited reservations in the above deed, which are obviously designed for the service and benefit of those mills, were reserved to the grantor and his assigns, *as owners of such mills;* and of consequence, the defendants, not having purchased those mills of Dorman, have no right or interest in those reservations, and cannot claim to set them up for any purpose. The owner of the mills below

43 *

might release them without doing any injury to the defendants. Though they purchased other land of Dorman, they were strangers to these reservations, and cannot justify acts which would be otherwise wrongful in respect to them. This consideration applies to all these reservations which relate to the use of the lower premises for a saw mill and clothier's works for customers, and to drawing water from West Pond, and raising the gate for that purpose. Indeed, it extends to all the express reservations out of the grant. But the grantor did, at the time, own land above the granted premises, which has come, by mesne conveyances, to the defendants; and the question is, whether their rights are affected by the clause, " with the privilege of flowing back, by a dam on the premises, within two rods," &c. The defendants contend that this was an absolute restriction, upon the grantee and his assigns, from flowing the land of the grantor and his assigns, beyond the line limited, upon which they, as his grantees and assigns, have a right to insist.

The general rule is, that a grant of land in fee carries all the rights of ownership, and its incidents, unless restrained by express words or necessary implication. Here there are no negative words, nor any express restrictions. The right to build a dam on the land granted would have existed, without these words, as incident to ownership, and the right of flowing all the land granted would pass, without any words, as in like manner incident to ownership. But we understand that the limit, to which the right to flow was granted, was beyond the limits of the granted premises, and on the grantor's own land. Here there was something for this grant to operate upon; an easement for flowing, to a certain extent, in the grantor's own land. This would give a full right to the grantee to use the grantor's land; a privilege not depending on the mill acts, and one, therefore, which the grantee and his successors could enjoy without payment of damages. But we think this express and affirmative grant, without negative words, did not take away or limit the right, legally incident to the ownership of land, through which a stream of water

passes, to erect a dam on his own land, and raise a head of water for the working of mills, which may, to some extent, flow the lands of another, under the authority and upon the terms provided by the mill acts.

The court are therefore of opinion, that if the plaintiff has increased the height of his dam, for the use of his mills, interfering with no mill above, although he has thereby flowed some land of the defendants, he had a right to do so, under the mill acts; that the defendants had no right to divert and draw off the pond thus raised, by a canal on their own land; and that their remedy must be sought under the mill acts.

*Defendants defaulted, and damages to be determined by an assessor.*